# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| ZACHARY P. HUDLER,<br>    *Plaintiff* | § | |
| | § | |
| | § | |
| v. | § | **Case No. 1:22-CV-769-LY** |
| | § | |
| WILEY MCAFEE, JACK | § | |
| SCHUMACHER, JAMES LOVING, | § | |
| and ADAM ACOSTA, individually, | § | |
| and BLANCO COUNTY, TEXAS, | § | |
|     *Defendant* | | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

### TO: THE HONORABLE LEE YEAKEL
### UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Blanco County's Motion to Dismiss Plaintiff's Original Complaint, filed September 2, 2022 (Dkt. 2); Defendants Wiley McAfee and Jack Schumacher's Motion for Partial Judgment on the Pleadings, filed October 25, 2022 (Dkt. 8); and the associated response and reply briefs. The District Court referred the motions to this Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkts. 5, 10.

## I.     Background

Plaintiff Zachary Hudler, an attorney in Blanco County, Texas,[1] brings this civil rights lawsuit against Blanco County and several Blanco County officials. Hudler alleges that he was falsely arrested and prosecuted for a crime he did not commit, subjected to excessive use of force, and

---

[1] Hudler alleges that he is "what was once commonly referred to as a 'country lawyer[,]' meaning a lawyer that practices in a small town or community and handles matters across a broad spectrum of legal fields." Dkt.1 at 4 n.1.

the officials presented false testimony against him, in violation of his constitutional rights. Dkt. 1 (Plaintiff's Original Complaint) ¶ 1.

Hudler alleges that he represented Jarrett Bous, a Blanco County resident who owns a 10-acre property where he leases cabins and RV spaces, in several civil matters before August 14, 2020. *Id.* ¶ 16. On July 3, 2020, Bous asked Hudler to contact one of Bous's tenants, Robert Poole, about past due rent that he allegedly owed to Bous. *Id.* ¶ 20. Hudler alleges that he contacted Poole and exchanged several messages with him about the past due rent. *Id.* ¶ 21. Poole's body was discovered outside his residence on Bous' property on July 8, 2020. *Id.* ¶ 22.

On July 23, 2020, Bous was arrested and charged with murdering Poole. *Id.* ¶ 18. Bous retained Hudler to represent him in his criminal case on August 14, 2020. *Id.* ¶ 24. Hudler alleges that a few minutes after he agreed to represent Bous, Adam Acosta, a sergeant with the Blanco County Sheriff's Office, called him and "offered his 'opinion' that Hudler could not represent Mr. Bous in the murder case because there was a conflict of interest." *Id.* ¶ 32. Hudler alleges that Acosta stated, "it would be a conflict of interest for you (Hudler) to represent a dead guy and the guy who murdered him." *Id.* ¶ 33. Hudler alleges that he told Acosta he did not have a conflict of interest because he never represented Poole. Acosta allegedly told Hudler that he would pass Hudler's message "up the chain." *Id.* ¶ 37.

Two weeks later, Hudler alleges that he was sitting in his car with his wife when Acosta approached the driver's side window. Acosta told Hudler that "'they' needed to speak with Hudler." *Id.* ¶ 49. Hudler alleges that he followed Acosta toward a picnic table on the courthouse lawn. Blanco County District Attorney Investigator Jack Schumacher and James Loving, a sergeant with the Blanco County Sheriff's Office, approached and sat down at the table. *Id.* ¶¶ 50-52. Hudler alleges that he suggested that they meet in his office, but Schumacher refused. *Id.* ¶ 59.

Hudler alleges that "there appeared to be a body camera on the table near where Acosta was standing." *Id.* ¶ 60.

Wiley McAfee, District Attorney for the Texas 33rd and 424th Judicial Districts, which include Blanco County, then approached the table with a file underneath his arm, and Hudler greeted McAfee with a handshake. *Id.* ¶¶ 64-65. Hudler alleges that Schumacher "reached across the table and grabbed Hudler's phone that was sitting on the table," while saying "give me that phone" in a "very aggressive tone." *Id.* ¶¶ 68-70. Hudler states that he was "understandably upset" and "grabbed his phone from Schumacher, got up from the table, and headed back toward his office." *Id.* ¶¶ 70-72. Hudler stopped about twenty feet from the table. *Id.* ¶ 75.

Hudler alleges that: "Without warning, Loving tackled Hudler to the ground while Acosta grabbed and struck Hudler's head," cutting his left eye. *Id.* ¶¶ 78-79. Hudler alleges that Loving and Acosta "forced Hudler to his knees while screaming at him to give them his phone," which had been knocked out of his hands. *Id.* ¶¶ 79-80. Acosta then handcuffed Hudler. *Id.* ¶ 85. Schumacher and McAfee told Hudler that they had a search warrant and he was under arrest for evading a search warrant. *Id.* ¶¶ 91-97. Hudler alleges that Blanco County Judge Brett Bray "witnessed the entire incident from the upstairs of the Blanco County Courthouse" and Hudler's wife recorded the incident on her phone. *Id.* ¶¶ 90, 106.

After his arrest, Loving took Hudler to the Blanco County Jail. *Id.* ¶ 114. Hudler alleges that Schumacher and Acosta came to the jail and gave him documents, including a search warrant, an affidavit for search warrant, and a waiver of privilege from Poole's estate representatives. *Id.* ¶ 117. Hudler alleges that only the seventh page of the search warrant mentions seizure of his person, as opposed to his phone, and that page appears to have been printed separately from the first six pages, which end midsentence. *Id.* ¶¶ 121-23. Three Sheriff's Deputies, including Loving,

presented Hudler with a blood warrant and his blood was drawn. *Id.* ¶ 126. Hudler then was released on a $1,000 bond. *Id.* ¶ 129.

Hudler was charged with resisting arrest, search, or transportation, a misdemeanor, and prosecuted "for over a year." *Id.* ¶¶ 130, 135. Hudler alleges that McAfee "remained intimately involved with Hudler's prosecution." *Id.* ¶ 136. At a hearing held on September 21, 2021, the special prosecutor agreed to dismiss the charge. *Id.* ¶¶ 140, 142.

Hudler alleges violations of the Fourth and Fourteenth Amendment under 42 U.S.C. § 1983 against Blanco County and Acosta, McAfee, Loving, and Schumacher. He asserts these claims: (1) false arrest against all the individual defendants; (2) excessive force against Acosta and Loving; (3) presentation of false testimony/evidence against Loving and Schumacher; (4) conspiracy to violate Hudler's constitutional rights against all the individual defendants; (5) bystander liability against all the individual defendants; and (6) a *Monell*[2] claim against Blanco County. He seeks damages and attorneys' fees.

Blanco County now moves to dismiss all claims against it under Rule 12(b)(6). Defendants McAfee and Schumacher seek partial judgment on Hudler's presentation of false testimony/evidence, conspiracy, and bystander claims under Rule 12(c).

## II.    Legal Standards

### A.  42 U.S.C. § 1983

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

---

[2] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) show that the alleged deprivation was committed by a person acting under color of state law. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

Claims under Section 1983 may be brought against persons in their individual or official capacity, or against a governmental entity. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). However, it is well established that a municipality or a local governmental unit is not liable under Section 1983 on the theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Therefore, to establish municipal liability under Section 1983, a plaintiff must show (1) an official policy or custom, of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Newbury v. City of Windcrest, Tex.*, 991 F.3d 672, 680 (5th Cir. 2021) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

**B. Rules 12(b)(6) and 12(c)**

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does
> not need detailed factual allegations, a plaintiff's obligation to provide
> the grounds of his entitlement to relief requires more than labels and
> conclusions, and a formulaic recitation of the elements of a cause of
> action will not do. Factual allegations must be enough to raise a right
> to relief above the speculative level, on the assumption that all the
> allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). The court's review is limited to the complaint, any

documents attached to the complaint, and any documents attached to the motion to dismiss that

are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays

Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Rule 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are

closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The standard for evaluating

Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6)

motions to dismiss for failure to state a claim. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019).

Under both rules, the Court must determine whether, "in the light most favorable to the plaintiff,

the complaint states a valid claim for relief." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010)

(quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)).

### III.   Blanco County's Motion to Dismiss

Hudler alleges that the County should be held liable for the alleged constitutional violations of

the individual defendants because it maintained the following unconstitutional policies or customs:

(1) use of false evidence to support the indictment, arrest, and prosecution of individuals;

(2) use of improper witness interview techniques;

(3) failure to pursue investigative leads that would result in exculpatory evidence;

(4) use of excessive force in effectuating arrests or detentions;

(5) fabrication of evidence; and

(6) participation by policymakers in conspiracies to interfere with an individual's
constitutional rights.

6

Dkt. 1 ¶ 195. Hudler also alleges that Blanco County should be held liable for failure to train and supervise the individual defendants. The County contends that all of Hudler's claims against it must be dismissed because he fails to identify the specific policy or custom that was the alleged moving force of the alleged constitutional violations.

### A. Unconstitutional Policy, Custom, or Practices Claim

In *Monell*, 436 U.S. at 694, the Supreme Court held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Therefore, to establish municipal liability under Section 1983, a plaintiff must show (1) an official policy or custom, of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Newbury*, 991 F.3d at 680.

To satisfy the first element of liability under Section 1983, an official policy can include written policy statements, ordinances, or regulations, as well as a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). A policy or custom is official when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). A single decision may create municipal liability if it is made by a final policymaker responsible for that activity. *Bennett*, 74 F.3d at 586.

### 1. Final Policymakers

Hudler argues that Blanco County Sheriff Don Jackson and District Attorney Wiley McAfee acted as final policymakers for Blanco County as to the constitutional violations he alleges. Hudler contends that McAfee acted as a police officer by participating in the criminal investigation and personally ordering Hudler to be arrested, and that these activities "fall outside McAfee's normal prosecutorial capacity." Dkt. 4 at 5.

The County can be responsible for actions of a final policymaker who has "the responsibility for making law or setting policy in any given area of a local government's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988). Exercising discretion in an area of governmental action is not enough; the official must be the one responsible for setting controlling policy. *Culbertson v. Lykos*, 790 F.3d 608, 624 (5th Cir. 2015).

Under Texas law, the county sheriff is the county's final policymaker in the area of law enforcement. *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996). Therefore, the Court finds that, at the time of Hudler's arrest, Sheriff Jackson was a final policymaker for Blanco County.

Deputy sheriffs, including Defendants Acosta and Loving, are not final policymakers. *Amador v. Bexar Cnty.*, No. 5:15-CV-810-RP, 2017 WL 4562895, at *6 (W.D. Tex. Oct. 11, 2017) (stating that "courts have held that a deputy or sergeant is not an official with policymaking authority for a governmental entity") (citing *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004) (stating that each of the two county employees whose conduct was complained of "was only a deputy sheriff and hence was not a policymaker")).

As to District Attorney McAfee:

> [S]ometimes a policymaker wears more than one hat. Again, only *county* policymakers count for liability under *Monell*. So what happens when an official sometimes acts for the county, and sometimes acts for another governmental entity, like the state? In those cases, we have to

> weigh state law and the policymaker's complained-of actions. Only
> then can we decide which entity is to blame.

*Arnone v. Cnty. of Dallas Cnty., Tex.*, 29 F.4th 262, 266 (5th Cir. 2022). In determining whether McAfee was a final policymaker for the County, the Court's "examination turns on 'what state law provides as to the specific relevant function, *i.e.*, the act that is being challenged in the litigation.'" *Arnone*, 29 F.4th at 267 (quoting *Daves v. Dallas Cnty.*, 22 F.4th 522, 533 (5th Cir. 2022) (en banc)).

Hudler has not stated facts sufficient to show that McAfee acted as a final policymaker for the County as to the six unconstitutional policies he alleges. Because Hudler alleges only that McAfee was aware of the policies, the Court cannot evaluate whether McAfee acted for the state or for Blanco County in connection with his "complained-of actions." *Id.* at 266. Hudler relies on *Turner v. Upton Cnty.*, 915 F.2d 133, 137 (5th Cir. 1990), for the proposition that a county may be liable for the acts of a district attorney who enters into a conspiracy with a county sheriff. But Hudler does not contend that Sheriff Jackson participated in the conspiracy he alleges.

Hudler has not alleged facts sufficient to show that District Attorney McAfee acted as a final policymaker for Blanco County as to the constitutional violations he alleges. The Court concludes that Hudler cannot state a claim against the County based on the participation of a final policymaker in the alleged constitutional violations.

### 2. Widespread Practice and Ratification

Hudler has not alleged that the County had any written policy statements, ordinances, or regulations that caused his alleged constitutional violations. Without an "official policy," a plaintiff may establish a policy through the widespread practice of county officials or employees. *Sinegal v. City of El Paso*, No. EP-19-CV-107-KC, 2020 WL 13442013, at *14 (W.D. Tex. July 6, 2020) (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 171 (5th Cir. 2010)). A single

incident may result in municipal liability under a ratification theory in "extreme factual situations." *Id.* (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)).

Hudler does not appear to allege an official policy based on a widespread practice. Nor could he, having failed to identify a single prior incident involving a similar constitutional violation. *Ayon v. Austin Indep. Sch. Dist.*, No. 1:19-CV-586-RP, 2020 WL 1536383, at *5 (W.D. Tex. Mar. 31, 2020) (granting motion to dismiss where plaintiff alleged only one prior incident in support of a widespread practice).

Hudler's conclusory assertion that the County ratified the individual defendants' conduct by failing to discipline them also is insufficient. Dkt. 1 ¶ 200. It is established that "a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 848. In the Fifth Circuit, moreover, the ratification theory has been limited to "extreme factual situations" far more egregious than those Hudler alleges here. *See Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985).

Accordingly, the Court finds that Hudler has not alleged the existence of an official policy based on the existence of a widespread practice or a ratification theory.

## B.  Failure to Train and Failure to Supervise Claim

Next, Hudler alleges that the County had a policy of failing to train its officers in "the proper and ethical techniques in conducting criminal investigations and prosecutions and not engaging in excessive force." Dkt. 1 ¶ 205. An official policy may also exist where a municipality fails to train its employees, establishing a "deliberate indifference" to the rights of its inhabitants. *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 389-90 (1989)). To avoid dismissal of a Section 1983 failure-to-train claim, a plaintiff must plead sufficient facts to show that (1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a moving force

in causing the constitutional violation; and (3) the municipality was deliberately indifferent in adopting its training policy. *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010). The Court finds that Hudler has failed to allege deliberate indifference.

Deliberate indifference may be found in two types of situations: (1) a general failure to provide adequate training in light of the foreseeable serious consequences, and (2) a failure to act in response to the specific need to train a particular officer. *Hobart v. Estrada*, 582 F. App'x 348, 357 (5th Cir. 2014). In the first situation, a plaintiff usually must show a pattern of similar violations. *Id.* (citing *Valle*, 613 F.3d at 547); *Ayon*, 2020 WL 1536383, at *7 (granting motion to dismiss where plaintiff failed to allege a pattern by identifying only one prior incident). Hudler has not alleged any prior incidents in support of pattern.

In the second situation, deliberate indifference may be found through a single incident if a plaintiff can prove that the highly predictable consequence of a failure to train would result in the specific injury suffered. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). But this narrow, single-incident exception generally is reserved for cases in which the government actor was provided no training whatsoever, *Peña v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018), and there was "an abundance of evidence about the proclivities of the particular officer involved in the use of excessive force." *Valle*, 613 F.3d at 549 (citing *Brown v. Bryan Cnty., OK*, 219 F.3d 450, 462 (5th Cir. 2000)).

Hudler alleges only that the County knew Acosta "resigned in lieu of termination from his prior employment prior employment as a police officer with the Austin Independent School District for violations of policy." Dkt. 1 ¶ 206. This conclusory allegation does not permit the Court to infer that the highly predictable consequence of not providing more training was the specific injury Hudler alleges. *See Henriquez v. City of Farmers Branch, Tex.*, No. 3:16-CV-868-

M-BN, 2022 WL 3127838, at *7 (N.D. Tex. July 8, 2022), *R. & R. adopted*, 2022 WL 3104844 (N.D. Tex. Aug. 4, 2022) (granting motion to dismiss where three prior excessive force complaints against officer fell "materially short of the extreme facts underlying *Bryan County*"); *see also Ayon*, 2020 WL 1536383, at *7 (stating that, without facts about the inadequacies in training, the court cannot infer that the violation was the "highly predictable consequence" of those inadequacies). The Court finds that Hudler has failed to state a claim under a failure to train theory.

### IV.    McAfee and Schumacher's Motion for Partial Judgment on the Pleadings

In his Complaint, Hudler alleges that the individual defendants used excessive force, falsely arrested him, and presented false testimony/evidence against him, in violation of the Fourth and Fourteenth Amendments. Hudler also alleges that the individual defendants conspired to violate his civil rights. McAfee and Schumacher seek dismissal of the false arrest and false testimony claims, asserting that McAfee is entitled to prosecutorial immunity and Schumacher has immunity as a witness providing testimony. They also argue that Hudler's conspiracy and bystander claims fail as a matter of law.

In his response brief, Hudler clarifies that he asserts only these claims against both McAfee and Schumacher: (1) false arrest (cause of action A); (2) conspiracy (cause of action D); and (3) bystander liability (cause of action E). Dkt. 9 at 3-4. In his third claim (cause of action C), Hudler alleges that Schumacher "intentionally and in bad faith presented false testimony and other evidence to secure Hudler'[s] arrest and criminal prosecution." Dkt. 1 ¶ 169. But in his brief, Hudler states that he seeks

> to hold Schumacher responsible for what appears to be an altered search warrant. Doc. No. 1, pg. 16-17, ¶ 173; see Exhibit A. Defendant's motion does not address or affect those claims. Defendant's motion only concerns Schumacher's testimony at a post arrest hearing, which is not the basis of Plaintiff's claim.

Dkt. 9 at 3. Hudler asserts that he is "not seeking to assert direct or indirect claims against McAfee or Schumacher for their actions taken 'post arrest.'" *Id.* at 4. Accordingly, to the extent that Hudler's third claim comprises an allegation of false testimony by Schumacher (Dkt. 1 ¶ 172), Hudler is not pursuing that claim, and the Court recommends that the claim be dismissed. Hudler's claim for "presentation of false testimony/evidence" survives against Loving and against Schumacher for allegedly altering the search warrant. *Id.* ¶ 173 ("Based on the blatant inconsistencies between pages six and seven of the Search Warrant Affidavit that Schumacher prepared, it appears that the Search Warrant Affidavit was altered or changed.").

### A. Prosecutorial Immunity

McAfee argues that he is entitled to prosecutorial immunity for "any actions taken in McAfee's role in prosecuting Plaintiff." Dkt. 8 at 8. Specifically, McAfee contends that actions covered by prosecutorial immunity "include initiating, investigating, and pursuing a criminal prosecution." *Id.* Because Hudler pursues no claims against McAfee for post-arrest conduct, the Court must determine whether McAfee is entitled to absolute immunity for his alleged pre-arrest conduct. The Court finds that he is not.

Prosecutors are absolutely immune from liability when carrying out "prosecutorial functions," which are those activities "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). The Supreme Court has been "quite sparing" in recognizing absolute immunity and has "refused to extend it any further than its justification would warrant." *Burns v. Reed*, 500 U.S. 478, 487 (1991) (citations and internal quotation marks omitted). Because prosecutorial immunity is an affirmative defense, the defendant "bears the burden of proving that the conduct at issue served a prosecutorial function." *Wearry v. Foster*, 33 F.4th 260,

269 (5th Cir. 2022) (citation omitted). There is a presumption that qualified rather than absolute immunity is appropriate. *Burns*, 500 U.S. at 486-87.

Hudler's claims for false arrest, conspiracy, and bystander liability stem from McAfee's participation in executing the search warrant. In *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), the Supreme Court distinguished between a prosecutor's role in preparing for trial and a detective's role in "searching for the clues and corroboration that might give him probable cause," explaining:

> When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other. Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he has no greater claim to complete immunity than activities of police officers allegedly acting under his direction.

*Id.* at 273-74 (cleaned up). Because Hudler challenges McAfee's role in the execution of a search warrant, a function typically performed by police officers, the Court finds that he has not established entitlement to absolute immunity. *See Terwilliger v. Reyna*, 4 F.4th 270, 281 (5th Cir. 2021) (finding district attorney's alleged conduct of investigating at the scene and taking photographs was more like a law enforcement officer conducting an investigation than a prosecutor); *see also Cybernet, LLC v. David*, No. 7:16-CV-16-RJ, 2016 WL 5106986, at *6-7 (E.D.N.C. Sept. 19, 2016) (holding that district attorney was not entitled to absolute immunity where plaintiffs' "claims stem from the District Attorney's alleged participation in the execution of search warrants that resulted in the destruction of Plaintiffs' property"); *Church of Universal Love & Music v. Fayette Cnty.*, 892 F. Supp. 2d 736, 751-52 (W.D. Pa. 2012) (same where district attorney "participated in the investigation, preparation, and execution of the search warrant").

**B. Conspiracy Claim**

Hudler also alleges that the individual defendants conspired to violate his rights under the Fourth and Fourteenth Amendment. Defendants Loving and Acosta join McAfee and Schumacher in seeking dismissal of Hudler's conspiracy claim. The four individual Defendants argue that this claim should be dismissed because they are all County employees, and a government entity cannot conspire with itself.

In his response brief, Hudler states: "Because Defendants apparently agree that McAfee, Schumacher, Loving, and Acosta are all employees or agents of Blanco County, then Defendants are correct and there can be no civil conspiracy." Dkt. 9 at 4-5.

A single legal entity "is incapable of conspiring with itself for the purposes of § 1983." *Thompson v. City of Galveston*, 979 F. Supp. 504, 511 (S.D. Tex. 1997), *aff'd*, 158 F.3d 583 (5th Cir. 1998); *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994). The Court recommends that Hudler's conspiracy claim be dismissed as conceded.

**C. Bystander Liability Claim**

Finally, Hudler seeks to hold McAfee and Schumacher liable for excessive force and false arrest based on a bystander liability theory. Hudler contends he has pled that McAfee and Schumacher, who are state actors, were present during his arrest and had ample opportunity to intervene. McAfee and Schumacher argue that a district attorney and an investigator are not considered "fellow officers" for bystander liability. Dkt. 11 at 4 (citing *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013)).

To succeed on a bystander liability claim, a plaintiff must show that "the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir.

2013) (internal quotation marks omitted). The Fifth Circuit has rejected the argument that officers from different law enforcement agencies are not subject to bystander liability for each other's actions. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). McAfee and Schumacher argue that there is no authority to extend bystander liability to a district attorney and an investigator for the district attorney's office.

Courts have reasoned that bystander liability is imposed based on an "officer's law enforcement position, where he or she is sworn to uphold the law and authorized to use force when necessary." *Grandpre v. Correct Health*, No. CV 16-1543, 2016 WL 4539442, at *11 (E.D. La. Aug. 29, 2016) (citing *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002), *R. & R. adopted*, 2016 WL 4987265 (E.D. La. Sept. 19, 2016). On this basis, some courts have rejected the application of bystander liability to non-law enforcement officers. *Id.* at *11 (stating that the law does not support applying bystander liability to a nurse at a correctional facility); *Rodriguez v. Parker*, No. 1:15-CV-181-P-BL, 2016 WL 4179799, at *6 (N.D. Tex. Apr. 27, 2016) (stating that there is no authority to support applying bystander liability to a school principal), *R. & R. adopted*, No. 1:15-CV-181-C-BL, 2016 WL 4184437 (N.D. Tex. Aug. 5, 2016); *see also Drumm v. Valdez*, No. 3:16-CV-3482-M-BH, 2019 WL 7494443, at *7 (N.D. Tex. Dec. 3, 2019) (stating that, even if nurse had a duty to intervene, plaintiff did not allege facts indicating she had authority or realistic ability to stop excessive force), *R. & R. adopted*, No. 3:16-CV-3482-M-BH, 2020 WL 85163 (N.D. Tex. Jan. 6, 2020).

Under Texas law, investigators for the district attorney's office are peace officers. TEX. CODE CRIM. PRO. art. 2.12(5). Investigators have a duty to "preserve the peace within the officer's jurisdiction" and "shall use all lawful means" to effect that purpose. TEX. CODE CRIM. PRO. art. 2.13; *see also id.* art. 2.1387 (stating that peace officers have a duty to intervene to stop or prevent

another peace officer from using excessive force). For these reasons, the Court finds that Hudler has stated a claim for bystander liability against Schumacher.

Whether bystander liability applies to a district attorney is a closer call because the district attorney is not tasked with similar duties under Texas law. *See* TEX. CODE CRIM. PRO. art. 2.01. Hudler identifies no authority for extending bystander liability to district attorneys. The Court recommends that Hudler's claims against McAfee for excessive force and false arrest on a theory of bystander liability be dismissed.

## V.   Plaintiff's Request for Leave to Amend

In his response to the County's motion, Hudler seeks leave to file an amended complaint if the Court finds his pleadings deficient. Courts should freely grant leave to amend when justice so requires. FED. R. CIV. P. 15(a)(2). District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Granting leave to amend "is especially appropriate . . . when the trial court has dismissed the complaint for failure to state a claim." *Id.* (quoting *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977) (per curiam)).

Hudler neither submits a proposed amended complaint nor describes any other facts he would plead to cure the defects in his claims against the County. Without a proposed amended complaint, the Court cannot assess whether amendment is warranted. *See Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) (holding that leave to amend is not required where movant fails to inform court of facts it would plead in amended complaint to cure any deficiencies); Local Rule CV-7(b) (requiring that an executed copy of proposed pleading be filed as an exhibit to motion for leave).

As to his claims against the individual defendants, Hudler states that he can amend his complaint to "include additional facts to expressly state that Schumacher and McAfee hold law

enforcement licenses." Dkt. 9 at 6. As noted above, Schumacher is a peace officer under TEX. CODE CRIM. PRO. art. 2.12(5), so the Court has recommended against granting his motion to dismiss Hudler's bystander liability claim. But Hudler has not shown that this added fact would have any bearing on the sufficiency of his claims against McAfee. *See Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (stating that a district court may properly deny leave to amend "where the proposed amendment would be futile because it could not survive a motion to dismiss"). The Court therefore recommends that Hudler's request for leave to amend be denied without prejudice.

## VI.    Recommendation

For these reasons, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendant Blanco County's Motion to Dismiss Plaintiff's Original Complaint (Dkt. 2) **WITHOUT PREJUDICE**.

The Court **FURTHER RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Defendants Wiley McAfee and Jack Schumacher's Motion for Partial Judgment on the Pleadings (Dkt. 8). The Court recommends that the District Court dismiss Plaintiff's conspiracy claim as to all individual defendants and his claims against McAfee for false testimony and bystander liability, and otherwise deny the motion.

If the District Court accepts these recommendations, these claims from Plaintiff's Original Complaint will remain:

(A)  false arrest against Acosta, McAfee, Loving, and Schumacher;

(B)  excessive force against Acosta and Loving;

(C)  presentation of false testimony/evidence against Loving and Schumacher for actions taken before Hudler's arrest; and

(E)  bystander liability against Acosta and Schumacher.

The Court **FURTHER RECOMMENDS** that the District Court **DENY without prejudice** Plaintiff's request for leave to amend his Complaint.

The Court **ORDERS** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Lee Yeakel.

## VII.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on February 10, 2023.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE